**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cheryl Brands, ) | No. CV 08-8143-PCT-NVW |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Lakeside Fire District, Kayle McNeil and ) Jane Doe McNeil, husband and wife, ) | |
| Defendants. ) | |

The Court has before it Defendant Lakeside Fire District's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. #8). For the reasons set forth below, the motion to dismiss will be granted with leave to amend the complaint.

**I.      Background**

This case regards allegations under Title VII of the Civil Rights Act of 1964 of hostile workplace and constructive discharge based upon sexual discrimination. Various state law claims are alleged as well. For purposes of a motion to dismiss for failure to state a claim, all facts alleged in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 937 (9th Cir. 2008). According to the allegations, Plaintiff Cheryl Brands worked for the Fire District for a number of years, received numerous pay increases, and was promoted. Defendant Kayle McNeil is an elected member of Lakeside Fire District's board of directors. McNeil told

Brands's supervisor, Fire Chief Mineer, that McNeil disagreed with a woman receiving Brands's title, duties, and training certifications. McNeil informed Brands that he did not believe a woman should occupy her position, make her salary, or be in the workplace. McNeil also allegedly stalked Brands. Brands encountered McNeil while driving home from the supermarket and McNeil drove by Brands's house at different hours for no apparent reason. This stalking behavior adversely affected Brands's health.

At the peril of upsetting Board Member McNeil, Brands's supervisor, Fire Chief Mineer, did not change Brands's position or pay, informed Brands when the Fire District's board of directors planned to discuss her position, and wrote to the Fire District's board of directors to express concern regarding McNeil's actions. The Fire District's board of directors discussed Brands with a deputy county attorney in executive session and took no action either for or against Brands or McNeil. Brands alleges, with no further detail, that she reported concerns about McNeil to management but the inaction continued. Eventually, Brands left her job and sought redress in this suit.

**II.    Analysis**

Title VII of the Civil Rights Act of 1964 forbids workplace discrimination. "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a). Brands has alleged hostile work environment and constructive discharge claims. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord Burlington Indus. v. Ellerth*, 524 U.S. 742, 754 (1998); *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). To succeed on a claim that a hostile work environment gave rise to constructive discharge, the

plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004); *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987).

The issue presented in this motion to dismiss is whether Lakeside Fire District is liable for the alleged actions of Board Member McNeil. When evaluating employer liability under Title VII, the law looks to agency principles. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986). Title VII defines an employer as "a *person* engaged in an industry affecting commerce . . . and any *agent* of such a person . . . ." 42 U.S.C. § 2000e(b) (emphases added).[1] Relevant agency principles provide that an employer may be liable for torts committed by employees in the scope of their employment. *Burlington Indus.*, 524 U.S. at 756. No such liability attaches here. The "general rule is that sexual harassment by a supervisor is not conduct within the scope of employment," because the employee is not actuated by a purpose to serve the employer. *Id.* at 756-57.

Nonetheless, agency principles impose Title VII liability on employers for torts servants commit outside the scope of employment when:

(a) the master intended the conduct or the consequences, or
(b) the master was negligent or reckless, or
(c) the conduct violated a non-delegable duty of the master, or
(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

*Id.* at 758 (quoting *Restatement (Second) of Agency* § 219(2) (1957)). Lakeside Fire District is not directly liable for acting with tortious intent, nor is it indirectly liable for McNeil as its proxy or alter ego (subsection a); the Fire District is not vicariously liable for McNeil as an agent (subsection d); and Brands does not currently allege sufficient facts to state a claim that the Fire District is liable for negligently allowing McNeil to harass her (subsection b). Each

---

[1] The parties do not dispute that Lakeside Fire District is an employer for purposes of Title VII. *See* 42 U.S.C. § 2000e(a) (governments and political subdivisions included in the definition of person).

- 3 -

of these points will be taken up separately. There is no contention that this case involves a non-delegable duty (subsection (c)).

### A. Direct and Indirect Liability

The relevant agency principles distinguish between "direct liability, where the employer acts with tortious intent, and indirect liability, where the agent's high rank in the company makes him or her the employer's alter ego." *Id.* at 758 (discussing *Restatement (Second) of Agency* § 219(2)(a)). Neither theory will support liability in this case.

#### i. Direct Liability

The complaint does not allege that the Fire District itself acted with tortious intent. There are no allegations that Lakeside Fire District as a whole took any discriminatory employment action against Brands, whether or not it was influenced by Board Member McNeil's allegedly discriminatory motives. *See Lam v. Univ. of Haw.*, 40 F.3d 1551, 1560-64 (9th Cir. 1994) (issue of fact existed as to whether committee's hiring decision was improperly influenced by the committee head's discriminatory attitude and comments); *Simmons v. New Pub. Sch. Dist. No. Eight*, 251 F.3d 1210, 1215 (8th Cir. 2001) (issue of fact existed as to whether discriminatory motive of board president influenced termination of employee); *cf. also Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002) (single commissioner with unconstitutional motives who votes to eliminate plaintiff's job is insufficient to impute an unconstitutional motive to the commission as a whole and subject a county to liability under 42 U.S.C. § 1983).

#### ii. Indirect Liability

Neither is Lakeside Fire District sufficiently alleged to be indirectly liable for Board Member McNeil as a proxy or alter ego of the Fire District. A board member is not a proprietor, partner, or corporate officer for whom the employer would be indirectly liable as an alter ego. *See Katz v. Dole*, 709 F.2d 251, 255 (4th Cir. 1983) (cited with approval in *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998)), *abrogated on other grounds by Mikels v. City of Durham*, 183 F.3d 323, 329 n.4 (4th Cir. 1999). A sole proprietor,

managing partner, or corporate officer all have management power within the organization. In a case where the harasser was the president and general manager of a company, as well as a stockholder and member of the board of directors, the Fifth Circuit noted that "the only factor relevant to the determination of whether [the harasser] was a proxy for [the company] is whether he held a 'sufficiently high position in the management hierarchy' so as to speak for the corporate employer." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 384 (5th Cir. 2003) (quoting *Faragher*, 524 U.S. at 789). Individual board members lack such management authority.

### B. Vicarious Liability

Vicarious liability for intentional torts committed by an employee may arise "when the employee uses apparent authority (the apparent authority standard), or when the employee 'was aided in accomplishing the tort by the existence of the agency relation' (the aided in the agency relation standard)." *Burlington Indus.*, 524 U.S. at 759 (quoting *Restatement (Second) of Agency* § 219(2)(d)). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Id*. at 765.

Lakeside Fire District is not vicariously liable under the allegations of Brands's complaint because Board Member McNeil was not Brands's supervisor and was not an agent of Lakeside Fire District. Individual board members cannot supervise anyone in an organization; that is the officers' job. Board members also do not act as agents of the organization on whose board of directors they sit. *Restatement (Second) of Agency* § 14C & cmt. b.

Lakeside Fire District also argues that McNeil cannot create Title VII liability because, as an elected official, he is not an "employee" within the meaning of the statute. *See* 42 U.S.C. § 2000e(f). This argument is without merit and does not guide the outcome. Whether an elected official is an employee determines whether elected officials are within the class of plaintiffs who can bring suit under Title VII; it does not affect whether employers are

responsible for elected officials as agents of the employer. *See* 42 U.S.C. § 2000e(b) (defining "employer" to include the employer's "agents" without reference to "employee" status). In this case, the elected official is not an agent of the employer because he is an individual member of the board of directors. Other elected officials that are officers and therefore agents of government organizations, such as a Sheriff, can create employer liability under Title VII, even though the elected official is not an "employee" entitled to sue under Title VII as a plaintiff. *See, e.g.*, *United States v. Gregory*, 871 F.2d 1239 (4th Cir. 1989).

**C. Negligence Liability**

Under Title VII, an employer is liable for the torts of its servants when the employer is negligent or reckless. *Burlington Indus.*, 524 U.S. at 758 (citing *Restatement (Second) of Agency* § 219(2)(b)). "An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it." *Id.* at 759.

Typical negligence liability cases occur as a result of the failure of the employer to protect its employees on the premises from other lower level employees. In some circumstances, negligence liability extends to the torts of nonemployees that occur on the premises. In *Dunn v. Washington County Hospital*, 429 F.3d 689 (7th Cir. 2005), an employer's liability was extended to negligence in failing to prevent discriminatory working conditions where the actor was neither an employee nor an agent of the employer. Judge Easterbrook wrote that "it makes no difference whether the person whose acts are complained of is an employee, an independent contractor, or for that matter a customer." *Id.* at 691.

> Indeed, it makes no difference whether the actor is human. Suppose a patient kept a macaw in his room, that the bird bit and scratched women but not men, and that the Hospital did nothing. The Hospital would be responsible for the decision to expose women to the working conditions affected by the macaw, even though the bird (a) was not an employee, and (b) could not be controlled by reasoning or sanctions. It would be the Hospital's responsibility to protect its female employees by excluding the offending bird *from its premises*.

*Id.* (emphasis added). In Judge Easterbrook's view, the basis for negligence liability under Title VII is the same as the norm of premises liability:

> [A] person "[can be] subject to liability for harm resulting from his conduct if he is negligent or reckless in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, *upon premises* or with instrumentalities under his control."

*Id.* (quoting *Restatement (Second) of Agency* § 213(d)) (emphasis added).

Brands cites several other similar cases where an employer negligently failed to prevent discriminatory conduct by nonemployees that altered the conditions of the workplace: *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006); *Galdamez v. Potter*, 415 F.3d 1015 (9th Cir. 2005); *Turnbull v. Topeka State Hospital*, 255 F.3d 1238 (10th Cir. 2001); and *Folkerson v. Circus Circus Enterprises, Inc.*, 107 F.3d 754 (9th Cir. 1997). Brands does not allege, however, that McNeil harassed her at the workplace.

Brands does cite one case where actions off-premises precipitated employer liability. In *Little v. Windermere Relocation, Inc.*, a Corporate Services Manager was raped by a client while at a business dinner. 301 F.3d 958, 964 (9th Cir. 2001). The victim reported the rape to her employer's designated harassment complaint-receiving manager. *Id.* at 965. The harassment manager told her to discontinue working on the client account, but did not conduct any further investigation. *Id.* The manager testified in a deposition that, because the rape occurred outside the "working environment," she believed it fell outside the scope of the company's harassment policy. *Id.* The company's president continued to ask the victim about the status of the client account, and when informed of the rape immediately reduced her pay. *Id.* When the victim found the pay cut unacceptable, her employer fired her. *Id.* In the resulting Title VII suit, the rape victim alleged that her employer's response to the rape created a hostile work environment. *Id.* at 966.

The court of appeals held the evidence was sufficient to survive a motion for summary judgment. *Id.* at 967, 973. The court reasoned that "the nature of [the rape victim's] employment extended the work environment beyond the physical confines of the corporate office," because the "rape occurred at a business meeting with a business client." *Id.* at 967. Based upon this language, Lakeside Fire District argues that *Little* is inapplicable to this case

because "all of the alleged improper actions of Kayle McNeil occurred outside of Plaintiff's workplace," and the Fire District therefore had no legal obligation to address Board Member McNeil's behavior. Def.'s Reply on Mot. Dismiss 5-6 (doc. # 10). This argument fails because it ignores the balance of the operative analysis in *Little*. In that case, the court held it more significant that the employer's "subsequent actions reinforced rather than remediated the harassment." 301 F.3d at 967. The employer's "failure to take immediate and effective corrective action allowed the effects of the rape to permeate [the victim's] work environment and alter it irrevocably." *Id*. Even when the primary harassment is done off-premises by a non-agent of the employer, the employer's subsequent actions may reinforce the harassment and allow its effects to create an actionable abusive work environment. *Id*. at 968.

Thus, hostile work environment claims are not limited to the premises liability principles that Judge Easterbrook discussed in *Dunn*. *Little* demonstrates that an employer's reaction to harassment may give rise to liability even if it occurred outside the workplace. An employer's reaction to off-premises harassment can play into the calculus of both whether the plaintiff was subjected to a hostile work environment and whether the employer is liable for the harassment that caused the environment. An employer's failure to take immediate and effective corrective action can allow the effects of the harassment to permeate the work environment and alter it irrevocably. *Little*, 301 F.3d at 967. Similarly, if "the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct," then the employer is liable for the harassment that caused the hostile work environment. *Id*. at 968.

Brands's complaint contains allegations suggesting that McNeil's off-premises conduct may have had a workplace nexus. It includes a letter from Brands's supervisor, Fire Chief Mineer, to the chairman of Lakeside Fire District's board of directors stating as follows:

> The entire staff has felt the ongoing pressure of Mr. McNeil's actions.... Mr. McNeil has created an ongoing atmosphere within the Department of uncertainty among the personnel he has targeted as to whether they will continue to be employed.... His actions are affecting morale which has a direct

    effect on productivity, not to mention the physical and emotional toll it has taken on employees.

However, Brands's allegations regarding whether her employer had notice of her specific workplace issues, such as the stalking, and failed to take immediate and effective corrective action are either nonexistent or so vague and conclusory that they fail to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

    IT IS THEREFORE ORDERED that Defendant Lakeside Fire District's motion to dismiss (doc. #8) is granted, with leave to amend by April 20, 2009.

    IT FURTHER ORDERED that the clerk enter judgment dismissing this action with prejudice on April 21, 2009, if Plaintiff does not file an amended complaint before then.

    DATED this 7th day of April, 2009.

_____
Neil V. Wake
United States District Judge